UNION WRITING-MACH. CO. v. DOMESTIC SEWING-MACH. CO

(Circuit Court of Appeals, Third Circuit.    May 16, 1901.)

No. 1.

PATENTS—INFRINGEMENT—TYPEWRITING MACHINES.

The Brooks patent, No. 454,845, for a typewriting machine, the essential features of which are that each type bar carries three letters or characters, instead of two, as in prior machines, and the platen shifts to occupy three different positions instead of two, returning automatically, by the action of springs, to its normal or central position, must be limited to the precise mechanism described, to avoid anticipation in the prior art. Claims 5 to 9, inclusive, covering the platen and its actuating mechanism, as so limited, *held* not infringed.

Appeal from the Circuit Court of the United States for the District of New Jersey.

H. D. Donnelly and C. E. Mitchell, for appellant.

Harry E. Knight and Edmund Wetmore, for appellee.

Before DALLAS and GRAY, Circuit Judges, and BRADFORD, District Judge.

BRADFORD, District Judge. This is an appeal from a final decree of the circuit court of the United States for the district of New Jersey (95 Fed. 140) dismissing a bill filed by the Union Writing Machine Company, the appellant, against the Domestic Sewing Machine Company, the appellee. The bill charges infringement of letters patent No. 454,845, issued to Byron A. Brooks, June 30, 1891, and by Brooks assigned to the appellant, for improvements in type-writing machines, and contains the usual prayers for an injunction and an account. The answer sets up the usual defences, and also alleges champerty and estoppel. While the patent in suit contains thirteen claims, the charge of infringement has been restricted to claims 5, 6, 7, 8 and 9. They are as follows:

"5. In a type-writing machine, the combination of a shifting and longitudinally-traveling platen, a plurality of shifting key-levers attached to the same moving part by which the platen is caused to move in both directions from a central and normal position, a shifting-bar, and mechanism, substantially as described, for returning the platen to its normal position, for arresting it and holding it there.

6. In a type-writing machine, the combination of a shifting and longitudinally-traveling platen, a plurality of shifting key-levers by which it is caused to move in both directions from a central and normal position, a shifting-bar, and spring mechanism operating to return the platen to its normal position and also operating to arrest it and to hold it there.

7. In a type-writing machine, the combination of a shifting and longitudinally-traveling platen, a plurality of shifting key-levers by which it is caused to move in both directions from a central and normal position, a shifting-bar, a rock-shaft to which said bar is attached, spring mechanism for returning the platen to its normal position, and a fixed stop for limiting the vibrations of said spring mechanism.

8. In a type-writing machine, the combination of a shifting and longitudinally-moving platen, a plurality of shifting key-levers by which it is caused to move in both directions from a central and normal position, and movable stop mechanism for holding the platen in its normal position.

9. In a type-writing machine, the combination of a shifting and longitudinally-moving platen, a plurality of shifting key-levers by which it is caused to move in both directions from a central and normal position, and spring stop mechanism for returning the platen to its normal position and holding it there."

The manufacture by the appellee of the machine known as the Williams type-writer constitutes the alleged infringement. Each of the combinations covered by the several claims in suit includes in a type-writing machine a shifting and longitudinally-traveling platen, and a plurality of shifting key-levers by which the platen is caused to move transversely to the line of its longitudinal travel in both directions, or backward and forward, from a central and normal position, and also, except in the case of claim 8, certain mechanism for returning the platen to and holding it in its central and normal position. The combination of claim 8 contains, in addition to a plat-

en and a plurality of shifting key-levers, "movable stop mechanism" for holding the platen in its central and normal position. The alleged invention covered by the claims in suit under the several arrangements therein specified is well defined by counsel for the appellant as follows:

"The combination of a longitudinally-traveling three position platen, in connection with type-bars provided with three types, spring mechanism normally establishing and maintaining the platen in an automatic central position, where most of the printing is done, and a plurality of shifting key-levers whereby the platen is shifted and held in a front or rear position temporarily, at the will of the operator, for the purpose of printing upper case characters."

At and prior to the date of invention assigned by the appellant type-writing machines of the type-bar class, carrying a plurality of types on each type-bar and employing a longitudinally-traveling platen and a shifting key-lever by means of which the lower and upper case characters were brought in contact with the paper at the proper printing point, were well-known. Prior to ·that time there were in use not only type-bar machines in which the type-bars were shifted relatively to the platen, but type-bar machines in which the platen was shifted relatively to the type-bars. It is a serious question whether the state of the art at the time of the alleged invention does not negative patentable novelty in any of the combinations of the claims in suit. It certainly excludes all idea that these claims or any of them cover a primary or broad invention, and it is quite clear that if there was patentable novelty in any of the combinations contained in them it consisted solely in providing each type-bar with three types or characters and in devising the mechanism by which the platen was transversely moved from its central and normal position either forward or backward, temporarily held in such front or rear position, and automatically returned to and held in its normal position. In the description the patentee says:

"It will be observed that in the machine above described the type-bars carry each more than two types, and the platen is vibrated by a plurality of shifting key-levers, by means of which it is shifted from the normal position to more than one new position, the said platen being stopped in each of its movements automatically, returned to its normal position, and held in that position until shifted, so that the printing is all done in line from more than two types on a bar by the simple operation of key-levers."

Patent No. 202,923, dated April 30, 1878, issued to Byron A. Brooks, discloses a type-writer having type-bars, each carrying an upper and a lower case type, and a shifting and longitudinally-traveling platen. The platen has no central normal position, as in the machine of the patent in suit, but moves backward and forward between two extreme positions, namely, its rear or normal position in which the lower case characters are brought to bear on the paper, and a front position in which the upper case characters are so employed. The platen is shifted from its normal to its front position by pulling a knob attached to a bar fixed to the platen supporting-frame, and is returned to its normal position by means of a spring. In the description the patentee says:

"The main object of my invention is to produce a machine which, without having duplicate keys and type-bars, will print both capital and small letters, so that the depression of each key will cause the printing of an upper or·

lower case letter, as may be desired. The improvements are, however, applicable for printing any other two characters by one key. The invention consists in the combination of type-bars, each having two or more letters or characters, with a vibratory platen, which may be adjusted instantly to receive the impression of either letter required. * * * It is obvious that the manner of moving the platen may be varied; that, instead of moving the platen, the entire series of type-bars may be moved; and also that, instead of having the large and small letters on each bar, two or more characters of any other kind may be used."

Claims 2 and 4 are as follows:

"2. The combination, in a type-writer, of a type-bar carrying an upper and a lower case letter with a platen arranged to vibrate in a line transverse to the line of printing, whereby either of said letters may be printed in line at will, substantially as described.

4. The combination of a series of type-bars, each provided with an upper and lower case letter, with a series of keys for operating the same, and platen arranged to move in line with the printing, and also at right angles thereto, substantially as described."

The Remington typewriter, similar to that shown in "Defendant's Exhibit Remington No. 2," was on the market before the date of invention assigned by the appellant and has commanded a large sale. It has type-bars, each carrying two types, and a shifting and longitudinally-traveling platen. The platen has no central normal position, but is shifted between its two extreme positions by means of shifting key-levers, of which there are two, and a spring. The spring itself is shiftable and by its adjustment either of the two positions of the platen may be made normal, the appropriate shifting key-lever moving the platen from, and the spring returning it to, its normal position. The conception of a platen shifting from a central normal position to an extreme position on either side was not new at the date of invention alleged by the appellant. In the description of patent No. 170,239, dated November 23, 1875, issued to Lucien S. Crandall for an "Improved Type-Writer," the patentee says:

"The platen D of my type-writer is arranged to move not only in the common ways in longitudinal direction, but also to vibrate in the direction of the type-bars, the supporting-frame and ways being moved therewith and operated by thumb-keys from or near the finger-levers and suitable connecting mechanism. The vibrations of the platen may be multiplied in proportion to the number of types to be provided for. For most purposes, however, the vibration of the platen from the central or normal position in forward or backward direction will be sufficient, in which case two operating thumb-keys and levers are required."

Patent No. 326,178, dated September 15, 1885, issued to Franz X. Wagner, discloses a type-writer having type-bars, each bearing three letters or characters, and a vibratory frame carrying the type-bars. In the description the patentee says:

"This invention consists in the combination of type-bars, each having two or more letters or characters, and each being actuated by a suitable key, with a vibratory frame which carries the type-bars, and which can be adjusted instantly to bring either of the types on the type-bar into the proper position to make an impression. The vibratory frame is subjected to the action of two springs, which have a tendency to retain the same in its normal position."

The first claim is as follows:

"1. The combination, with a type-bar carrying two or more types and a key for actuating it, of a vibratory frame which carries the type-bar, and which

can be instantly adjusted to bring either of the types on the type-bar in the line of printing, substantially as shown and described."

In the Wagner type-writer there is no transverse shifting of the platen relatively to the type-bar frame, as there is in the machine of the patent in suit, but the type-bar frame shifts relatively to the platen, having under the influence of two counteracting springs a normal position from which it is moved to its extreme position on either side by means of a handle and to which it returns automatically under the action of the springs. Shifting the platen toward and away from the type-bar frame plainly is the equivalent of shifting the latter toward and away from the former, and counteracting springs holding the platen in a normal position relatively to the type-bar frame are the equivalent of counteracting springs holding the type-bar frame in a normal position relatively to the platen. Brooks himself practically recognized such equivalency when he said in the description of patent No. 202,923, that "it is obvious that the manner of moving the platen may be varied; that, instead of moving the platen, the entire series of type-bars may be moved." The type-writer shown and described in the patent in suit contains two alternative forms of spring mechanism for moving the platen from its normal position to its extreme positions and restoring it from either of its extreme positions to its normal position and holding it there. One of these forms shown in Fig. 4 is similar in construction and operation to the spring mechanism of the Wagner patent, No. 326,178, for moving the vibratory type-bar frame from and to its normal position and keeping it there. The other shown in Fig. 2 has two shifting key-levers, connected with the shiftable platen frame by old and well-known intermediate mechanism. One of the levers on being depressed against the resistance of a spring shifts the platen from its normal to its front position and the other on being depressed against the resistance of the spring shifts the platen from its normal to its rear position. When the pressure is removed from either of the levers the platen is automatically returned from its front or rear position, as the case may be, to its normal position by the action of the spring against the lever from which the pressure is removed, and is there held through the resistance offered by the spring to both of the levers. By the action of either of the key-levers the platen is shifted only from one to the other of two positions, and by the action of the spring on either of the key-levers the platen is returned only from one to the other of two positions. One key-lever shifts the platen from its normal to its front position and the spring, acting on that lever, returns the platen from its front to its normal position. The other key-lever shifts the platen from its normal to its rear position and the spring, acting on such lever, returns the platen from its rear to its normal position. Relatively to the action of each lever and the spring, the platen has two extreme positions, namely, the central and the front position, or the central and the rear position, as the case may be. Considered separately, we perceive no difference in principle or operation between either key-lever and the spring and the key-lever and spring in use in the Remington typewriter above referred to. To place three types or

characters, instead of two, on a type-bar did not require invention, and so to employ two shifting key-levers and their spring or springs as to place the platen in three positions to permit the paper to receive the imprint of the three types or characters substantially involved only the duplication of well-known mechanism, aside from the adjustment of the spring or springs in such manner as to hold the platen in a normal central position. But automatic self-centering devices, including spring mechanism for returning a moving part to a central normal position from either side to which it may have been shifted, were old in the art. Such a device is shown in Fig. 7 of the Wagner patent No. 326,178. If the claims in suit are not void for lack of invention they are so near the line as to render inadmissible any latitude of construction. The combination of each claim includes as one of its elements "a plurality of shifting key-levers." The Williams type-writer, the alleged infringing device, has, instead of the two shifting key-levers of the machine of the patent in suit, a rocking lever with two keys. Any broad construction of the claims undoubtedly would include as an element such a rocking key-lever, for it performs the double function of two shifting levers in moving the platen in forward and backward directions from its normal position, and in substantially the same manner. But to adopt such a construction would go far toward negativing patentable novelty in the claims. The shifting device shown in Fig. 7 of the Wagner patent performs the equivalent function of shifting the type-bar frame relatively to the platen, moving the frame in forward and backward directions from its normal position. The handle or rod "I" of that device performs the double function of two levers. By pressing the rod in the Wagner machine on one side or the rocking key-lever in the Williams machine on one end it operates as one of two levers, and by pressing the rod on the other side or the rocking key-lever on the other end it operates as the other of such levers. It is evident, then, that if the claims in suit can be sustained they must receive such a construction as limits them to the mechanism shown in the patent. They "cannot receive the broad construction claimed, but must be limited to the precise mechanism described." Dashiell v. Grosvenor, 162 U. S. 425, 16 Sup. Ct. 805, 40 L. Ed. 1025. So limited, the alleged infringing machine does not contain "a plurality of shifting key-levers" as required by the combination of each of the claims in suit. This conclusion renders it unnecessary to consider whether it does or does not contain other features of the patented machine or to discuss the special matters of defense set up.

The decree of the court below is affirmed.