## PATENT BUTTON CO. v. SCOVILL MFG. CO.

(Circuit Court, D. Connecticut. January 24, 1899.)

No. 902.

1. PATENTS—OPERATIVENESS AND UTILITY—ANTICIPATION.

The mere issuance of a patent raises a presumption of its operativeness and utility; and defects, merely in minor details of construction, will not defeat the efficiency of the patent as an anticipation, provided it sufficiently discloses the principle of the alleged invention.

2. SAME—BUTTONS.

Patent No. 429,530, for a button particularly designed for trousers, which is to be attached to the goods by metal fasteners, and in which

the essential feature is an "independent die or clinching piece," construed, and *held* not infringed by a button made under the Shipley patent, No. 548,143; or, if construed to cover the Shipley device, *held*, that the patent is void for want of novelty.

This was a suit in equity by the Patent Button Company against the Scovill Manufacturing Company for alleged infringement of patent No. 429,530, to W. E. Jackson and L. A. Platt, for a button.

Gross, Hyde & Shipman and Mr. Cook, for complainant.

Mitchell, Bartlett & Brownell, for defendant.

TOWNSEND, District Judge. On June 3, 1890, complainant's assignors obtained patent No. 429,530. On October 15, 1895, Alfred J. Shipley obtained patent No. 548,143. Each of these patents is for a button of the class which are attached to fabrics by means of metal fasteners. The buttons in question are particularly designed for use on trousers. The defendant's button is made in conformity with the specifications of said Shipley patent.

Complainant's patent covers a rivet, and a button, with or without a button head, "provided with an independent die or clinching piece, having a shank, A, and a head, B, the said shank which forms the hub of the button being traversed by a longitudinal bore or opening, C, flared at its outer end to form a foot, D, * * * the said head * * * having an enlarged clinching space F, which is intersected by the opening or bore thereof."

*Fig. 1*

In attaching it to a garment, "the point of the rivet is then passed through the cloth and into the bore of the shank of the die, in which it is centered by the flaring outer end thereof. From the said bore the point of the rivet emerges into the clinching space of the die, and the pressure being continued, and the point of the rivet being confined in the said clinching die, it is forced to curl upon itself, * * * and so bind the several parts of the button" and the cloth together.

The term, "independent die or clinching piece," describes the essential element of the alleged invention of complainant's patent, the only novel feature therein. As complainant's expert says, "the die is a structure integrally in one piece, and may be cheaply and easily made in various ways." That is, the "independent die and clinching piece" was a single piece of metal, which guided, supported, upset, and retained the end of the tack, "without requiring the co-operation of any part of the button," as distinguished specifically by the patentee from the dependent dies of the prior art, in which the "work of clinching the rivet" required "aid from other parts of the button," or

the independent die, which "upset the point of a pointed rivet after the same has been assembled with the remaining parts of the button by forcing a cap down over its point."

The patent office rejected all the original claims. Every element of the combination was old. In fact, this art was so crowded that there was scarcely standing room for an inventor when complainant's assignors entered the field. Patent No. 183,996, to Wheeler, showed that this type of metal-fastened buttons was known in 1876. Patent No. 222,309, to Robertson, showed a longitudinal bore and a dependent die to turn up the rivet. Patents No. 226,722, to D'Aubigne, and Nos. 241,076, 371,381, and 421,441, to Shorey, showed every element of complainant's device in practically the same combination, except the integral independent die piece.

Complainant's assignors, confronted by this condition, specifically disclaimed clinching a pointed rivet by forcing it against a dependent die or button head, and described and claimed as their invention a button provided with one single integral structure, constituting an independent die or clinching piece having a longitudinal bore, a contracted opening, and an enlarged space at the inner end thereof, and an outwardly flared foot or base; the object being to produce a cheap button by means of a die struck from a single piece of metal. In this construction the longitudinal bore of the independent die piece centered and guided the point of the rivet into its clinching chamber, which upset and clinched it so that the clinched end rested against the wall of the contracted opening, as already stated.

The Shipley patent, under which defendant's buttons are made, covers what the patentee calls a "spacer button"; the spacer constituting a shank elongating device, and consisting of a flaring ring or flange of metal, which is fastened to the button head by an eyelet, and is folded inwardly upon itself. In a closed-head button the rivet is upset against the under side of the depressed face of the button, but in an open-head button it is upset upon the head of said eyelet. In each case, when so upset or curled over, it contacts with, bears on, and is held by, the inturned end of the spacer. The complainant contends that the only structural difference between the two buttons is in defendant's inturned flange, and that this inturned flange is unnecessary to support the upset rivet, because the upset rivet bears upon the neck of the eyelet so far as is essential for commercial purposes, or, if this is not so, that to thus insert a lining to restrict the neck of said eyelet is a mere evasion of the patent.

In support of the contention that the neck of the eyelet furnishes a sufficient bearing for the upturned end of the rivet, complainant introduced, in rebuttal, the testimony of its expert as to certain experiments made by him at complainant's factory with defendant's buttons after the inner cones and base of the spacer had been removed. It is said that the result of these experiments shows that the upset rivet in defendant's button withstood a strain over and above a claimed commercial requirement of 50 pounds. These ex parte expert experiments are not entitled to much consideration. Inasmuch as this point was vital in support of complainant's claim of infringement, it should have been tested, especially on rebuttal, by

experiments at which complainant could be present, or by other evidence which complainant could have an opportunity to investigate. It appears, furthermore, that a strain of 50 pounds is not equal to the commercial requirement, and that in defendant's buttons as actually made the inturned cone of the spacer is the efficient element of support.

The claim that the upturned flange, being a mere lining to restrict the bore for the rivet, thus constitutes, in effect, part of an independent die piece, and therefore unlawfully evades the patent, is untenable. That defendant's construction avoids the patent is true. But it avoids it because the eyelet unites the spacer and button head, and is a separate piece, having independent essential functions, distinct from those of the die. And it is only when the parts are assembled, and the die becomes dependent upon the eyelet, that the two parts are said to constitute complainant's die in any sense. But, when thus combined, the defendant's structure lacks the essential of complainant's die, as defined by its expert, since defendant's die is not a single piece, or "an independent piece," or "integral in one piece so that it may be easily and cheaply made in various ways"; and, further, because, while, according to complainant's theory, the clinching in defendant's button takes place in part against the inserted eyelet piece, in complainant's structure "the clinching of the end of the fastening tack does not take place against the cap piece of the button when present as an anvil or against any specially inserted piece for that purpose."

These considerations sufficiently present the decisive question in the case. If, however, the foregoing statement of opinion as to the facts is incorrect, and if complainant's contention be admitted, that the dependent die and eyelet structure of defendant, when assembled, is so far the equivalent of the independent integral one-picee structure of complainant that defendant infringes, then the patent in suit is void for want of patentable novelty, because the Shorey patents show a face plate or a piece of metal serving as a die in connection with either a spacer when assembled, or a contracted opening, and in each case dependent upon each other.

The Shorey patents are controlled by complainant. Counsel for complainant assert that they are mere paper patents, not adapted for successful practical use. The only proof on this point is the testimony of complainant's general superintendent, that "we do not manufacture buttons under these patents." The fact that the patents were issued raises a presumption in favor of their operativeness and utility (Dashiell v. Grosvenor, 162 U. S. 425, 16 Sup. Ct. 805); and, when the defects are merely in minor details of construction, such defects will not defeat the efficiency of such patents as anticipations, provided they sufficiently disclose the principle of the alleged invention (Pickering v. McCullough, 104 U. S. 310; Electric Ry. Co. v. Jamaica & B. R. Co., 61 Fed. 655). Furthermore, when the patentees of the patent in suit were referred to these patents, they specifically disclaimed the constructions covered thereby, and limited themselves to a construction which dispensed with the necessity of a spacer, and required a specific form of an independent die or clinching piece.

In view of these conclusions, the further claim that the integral independent die or clinching piece is anticipated by the Prentice, Raymond, and Kraetzer patents, and the further defense that the patent under which defendant manufactures is for a new type of button without the longitudinal bore, shown in all the drawings and expressly covered by all the claims except the second, will not be discussed.

Inasmuch as all the claims cover in terms the independent die or clinching piece, they need not be separately considered. Let a decree be entered dismissing the bill.