NEW ENGLAND MOTOR CO. v. B. F. STURTEVANT CO.

(Circuit Court, S. D. New York. October 10, 1905.)

1. PATENTS—ANTICIPATION—INOPERATIVE DEVICE.

A patent cannot, as an anticipation, properly have applied into it, from necessity, more than it fairly shows, to make it an operative structure. What is required, and not so shown, is left for later inventors.

2. SAME—INFRINGEMENT—ELECTRIC MOTOR FRAMES.

The Burke patent, No. 631,518, for an electric motor or generator, the essential feature of which is an armature cradle supported by the magnet frame and removably and reversibly attached thereto for the purpose of securing a permanently perfect alignment of the bearings and a machine which can be reversed and affixed to the ceiling when desired, without interfering with the adjustment of the armature, was not anticipated and discloses patentable invention; also *held* infringed.

3. SAME—PRIOR INVENTION.
 The Bliss patent, No. 669,574, for a dynamo-electric machine, considered, and *held* valid as against the claim of prior invention and use by another; also *held* infringed.

4. SAME.
 One who conceived an invention and exercised diligence in filing an application is entitled to a patent therefor, although it was first reduced to practice by another, to whom it was disclosed by the inventor.
 [Ed. Note.—For cases in point, see vol. 38, Cent. Dig. Patents, §§ 113–119.]

In Equity. On final hearing.

Clifton V. Edwards, for complainant.
Omri F. Hibbard and Horace Van Everen, for defendant.

HAZEL, District Judge. This action is for infringement of letters patent No. 631,518, to James Burke, dated August 20, 1899, for improvement in an electric motor or generator, and letters patent No. 669,574 to Donald M. Bliss, issued March 12, 1901, for improvement in a dynamo-electric machine. Complainant corporation owns both patents by assignment. The improvements specified are capable of conjoint use, and defendant admittedly embodies such inventions in its apparatus. The defense in relation to the earlier patent is anticipation; and the defense as to the later is that one Balcome, an employé of the defendant, was the prior inventor; the patentee having surreptitiously and fraudulently appropriated to himself the invention and having patented the same.

The Burke patent will be considered first. The specification states that the invention "relates to electric motors or generators, and has particular reference to the frames thereof. The object of the invention is to construct a machine in which the armature shall be concentrically placed in the magnet field in perfectly aligned bearings, which latter shall be permanent and not liable to displacement by use of the machine or other cause." In the machines of the prior art there was encountered difficulty and inconvenience, owing to the armature shifting or moving out of its place in the electric field on account of the displacement of the bearings in relation to the frame. The operativeness of the motor to not inconsiderable degree depended upon constantly maintaining the armature concentrically in the magnet field, and, inasmuch as the bearings support the armature, this could be accomplished only by their true alignment with each other. The objectionable displacement of the bearings invariably occurred whenever the parts of the device—the bearings and armature—were reassembled after a temporary separation or removal from their supports. Another object was the adjustment of the armature so that it could easily be removed from the magnet frame without taking it out of the bearings. The desideratum of the inventor evidently was to contrive a mechanism which would permanently secure a perfect alignment of the bearings and to adjust the armature so as to permit its removal without displacing the bearings. These advantages were secured by an addition to the machine consisting of a frame or cradle in which the armature was mounted and from which it could be re-

moved by simply lifting the same from the frame. Claims 1 and 3 are involved. They read as follows:

"(1) In a motor or generator, the combination with the magnet frame of the machine, of a cradle adapted to support the armature of the machine, and be supported by the magnet frame, substantially as described."

"(3) In a motor or generator, the combination with the magnet frame, of a cradle having a plurality of permanently mounted bearings for the armature shaft therein, said cradle being clamped to and supported by said magnet frame, substantially as described."

It will be observed that claim 1 is for the combination in a motor or generator of a magnet frame of a cradle adapted to hold the armature and supported by said magnet frame. Claim 3 provides for clamping the cradle to the magnet frame and giving it permanently mounted bearings for the armature shaft. The drawings attached to the specification are shown in the following:

The parts in detail are as follows: (1) The front view of the motor or generator; (2) an end view; (3) an upper view of the supporting frame or cradle; (4) an end view of the modified form of the invention. The utility of the invention is unquestioned. It is shown by the evidence that for a variety of causes it was difficult in practice to obtain a perfectly parallel bore to the pole faces of the field magnet, and that the true center or alignment of the field magnet of the armature to the path of electricity usually varied after the parts had once been separated. Such alignment in relation to the poles may be obtained in the Burke patent by simply pushing the frame or cradle sufficiently to one side or the other so as to permit the field magnetism to hold the armature between the bearings. The construction could easily be reversed and affixed to the ceiling whenever desired, without changing or varying the space between the poles and the armature by such changed position, or interfering with the true adjustment of the latter. Upon this point the specification says:

"It will be seen that the parts of the magnet frame may be reversed with relation to the cradle or bearing frame; that is, the part shown as the lower part in the drawings may be used as the upper part, and the machine thus reversed can then be readily attached to the ceiling."

The magnet frame at the lower end in one form of machine is provided with so-styled feet (figure 2) to facilitate attaching the apparatus to the ceiling.

Having stated the character and object of the invention, the anticipating devices may be considered. In the patent to Van Depoele, No. 275,549, dated April 10, 1883, a somewhat similar cradle or yoke to support the armature bearings is shown, which is integrally secured to the center of the magnet frame between the field coils. The armature can be removed only by removing an upper sleeve and the top of the boxes in the bearings. To lift or remove both the cradle and armature together it is necessary that the cap, upper pole piece, and winding be first removed, and then the cradle with the armature can be raised from the magnet frame, or the armature alone may be taken from its position. Evidently the object of the patentee was not the removal of the cradle with the armature. The language of the claims in suit is probably applicable to the description of the Van Depoele apparatus, but still I am of the opinion that the latter device does not anticipate the former. Complainant's evidence indicates that the Van Depoele machine is inoperative on account of the short circuiting by the iron pieces F². In explanation of the inefficiencies of the Van Depoele device, complainant's witness Burke says:

"In all dynamos and motors it is necessary to have a flow of magnetism through the armature, and this is the object of the magnet frame and magnet coils which are so arranged in all operative machines as to produce a flow of magnetism in the armature. In the Van Depoele machine, the pieces F² shunt the magnetism away from the armature, and, therefore, the object of the magnet frame and the magnet coils is defeated and the machine is consequently inoperative."

These observations are corroborated by the witness Bliss and are uncontradicted. Defendant contends, however, that the objection or inefficiency of the Van Depoele device is not entitled to probative weight, as such defects do not relate to the mechanical construction of the cradle or yoke and only affect its magnetic feature. This proposition is not maintainable, because the magnet frame is dependent for its successful operativeness upon the relative setting or alignment of the various parts of the machine. Moreover, the Van Depoele apparatus does not indicate to the art a motor with a removable or reversible armature cradle, as claimed in the Burke patent. The rule is well established that:

"A patent cannot, as an anticipation, properly have applied into it, from necessity, more than it fairly shows to make it an operative structure. What is required, and not so shown, is left for later inventors. Dashiell v. Grosvenor, 162 U. S. 425, 16 Sup. Ct. 805, 40 L. Ed. 1025; Universal Winding Co. v. Willimantic Linen Co. (C. C.) 82 Fed. 228; Wirt v. Farrelly (C. C.) 84 Fed. 890."

In the Thomson-Houston unpatented apparatus of 1891 is shown a motor having a cradle for running elevators. The cradle is clamped between the upper and lower parts of the magnet frame and not around it, as in complainant's device. The exhibit model in evi-

dence is not an accurate reproduction of the machine, as it omits the supports at the lower part. The following sketch taken from complainant's brief is a reproduction of the Thomson-Houston apparatus:

Regarding this machine, complainant's expert witness Bliss says:

"The cradle of this motor is not of a symmetrical shape relative to the point where it comes in contact with the posts which are cast on the pan or subbase. On account of this fact it would be impossible for the customer to reverse this cradle with the parts furnished with the machine. * * * As the two halves of the field magnet frame are identical in shape, being wrought iron forgings, there would be no object in reversing them relative to the cradle, as when reversed the machine would have exactly the same form and all parts would, in effect, have the same relative position as before. Owing to the manner in which this cradle is assembled, it would be necessary to take it all apart and remove it from its base or pan, which has the post cast on it, before any effort could be made to reverse the cradle relative to the field magnet."

The testimony upon this point of the witness Burke is to a similar effect. It will be noted that stress is laid upon the importance of the supports or subbase as indicated by the figures 2, 2, and 8, 8. The subbase apparently was necessary to insure the successful operativeness of the apparatus, for otherwise its entire weight would be borne by the field coils, an obviously detrimental expedient. It is true that the apparatus like the device of Burke consists of three parts, the upper and lower sleeve of the magnet frame and the armature supporting cradle. Defendant contends that a perfect alignment of the armature bearings is secured in the Thomson-Houston device, and that the armature may be removed without being taken from the bearings. This contention is not substantiated by the facts. To remove the armature and cradle together the upper part of the magnet frame is detachable upon withdrawing the bolts 6, 6; when that is done the cradle must be detached from the base support by taking out bolts 3, 3, and with the lower part of the magnet frame still attached must be turned over before said lower part of the magnet frame can be removed by withdrawing bolts 7, 7. In the Burke device, on the other hand, as already stated, the armature frame or cradle may readily be detached by simply raising the upper part of the magnet frame. Every vital part of the Burke apparatus appears to have been constructed with a view to the removableness of the cradle and

NEW ENGLAND MOTOR CO. V. B. F. STURTEVANT CO.    871

armature together with the least possible difficulty and to enable reversing the machine so that at the user's option it may be suspendeᴅ from the ceiling. I have reached the conclusion that the alleged anticipating device is not adapted for ceiling suspension, nor are the parts in question separated in the manner or with the facility of the Burke apparatus. The real principle of the latter is not found in the apparatus claimed by the defendant to be anticipatory. The patentee probably has not accomplished anything of amazing value or merit, but he has exploited a commercially successful machine which has patentable merit, in which the weight of the armature is borne by the cradle bearings and the required concentricity of the armature in relation to the path of electricity is thereby maintained. He has brought into the electric motor field a machine in which the armature may easily be removed without being taken out of its bearings. In this respect I think the antecedent art was improved and the inventive faculty was exercised beyond mere mechanical skill, and therefore the prior apparatus in question does not anticipate the Burke patent in suit.

The Bliss patent: The infringing claims, which are 1, 2, and 5, read as follows:

"(1) The combination with the field magnet frame having a symmetrical inner surface, of an armature cradle containing bearings for the armature and adapted to be supported upon the inner surface of said frame, the said cradle having a symmetrical surface to correspond with and engage that of the frame, as set forth.

"(2) The combination with the field magnet frame having inwardly projecting pole pieces, of an armature cradle provided with a supporting portion fitting the inner surface of said field magnet frame, whereby the said cradle and armature may be inserted or removed endwise without disturbing the field magnet frame or pole pieces."

"(5) In a dynamo electric machine, the combination with the field magnet frame provided with an inner cylindrical surface, of an armature cradle having external cylindrical supporting surface portions of a diameter substantially equal to that of the inner surface of a frame, as set forth."

The single question to be decided is whether Bliss has surreptitiously appropriated to himself the prior invention of another and patented the same. This defense can only be established upon a satisfactory showing that the invention was conceived by Balcome or the defendant's witness Bowles and completed by them or either of them. It is a general rule that he is the inventor and is entitled to the patent who originally completed and perfected the machine so as to render it capable of useful operation. The facts here, however, indicate as will be shown later, that the patentee conceived the idea which he subsequently disclosed to an employé of the defendant, who the defendant claims made the first machine. Under the circumstances and the evidence in this case, even if Bliss did nothing toward perfecting his conception, it is unimportant that he may not have been the first to complete the motor. Standard Cartridge Co. v. Peters Cartridge Co., 77 Fed. 630, 23 C. C. A. 367. He testified, however, that the improvement was actually constructed under his supervision while in the defendant's employ; but, even though Balcome reduced it to practice, assuming the invention to have been disclosed to him, as claimed by complainant, Bliss must still be re-

garded as the inventor, especially in view of his unquestioned diligence in filing his application for a patent. 1 Robinson on Patents, § 375. It appears by the evidence that in the summer of 1898, before entering the defendant's employ, Bliss had disclosed his invention to the witnesses Holland and Bickel, using a rough sketch in explanation thereof. Balcome, at the date of the disclosure to him in August, 1898, by the patentee, was draughtsman or designer in the employ of the defendant. The improvement was incorporated by him in a motor (type B) of defendant's manufacture. The details after disclosing the sketches of the invention to Balcome are thus narrated by the patentee:

"Mr. Balcome previous to this time had started on new designs for a motor to take the place of one shown on the records and generally known as the Adams motor. The drawing of this motor had not been completed when it was first shown to me. The details of the bearings, the method of supporting them, and some other minor details had not been completed. As the result of my consultation with Mr. Balcome, he incorporated the cradle form of bearing support, the special form of self-aligning bearing this new motor which is shown on the records and generally known as Type B motor. After work had been started in the draughting room on this motor, I made no further sketches but had frequent interviews with Mr. Balcome on the subject. To the best of my recollection, the detail drawings, tracings, prints, etc., were finally completed about the first of the year, 1899."

Balcome denies that the invention was disclosed as claimed, or that any sketches embodying the same were exhibited to him. He claims that one Bowles, a government naval employé, in the autumn of 1898 first suggested the improvement. I have examined the evidence of the defendant relating to the asserted prior use and invention, but I am not satisfied that Bliss prima facie is not the true and original inventor. The evidence as a whole is thought insufficient to sustain the defense.

My conclusion is that the Burke patent in suit is valid and not anticipated, as claimed by the defendant. The patent to Bliss was not surreptitiously obtained, and the patentee is the first and original inventor of the apparatus described in the specification. Such patents being held valid by the court, infringement is not questioned, and accordingly the complainant is entitled to a decree, with costs, that the defendant infringes claims 1 and 3 of the earlier patent and claims 1, 2, and 5 of the later, together with an injunction and accounting.