SCHURICHT v. McNUTT v. WILLIS.

SCHURICHT v. McNUTT v. BURNS.

District Court, D. Connecticut. April 20, 1928.

Nos. 55806, 55807.

1. Patents ⟨⟩65—Foreign patent is anticipatory only if it enables one skilled in art to practice it without experiments.

An American patent is not anticipated by a prior foreign patent, unless the latter teaches persons skilled in the art to make it operative by following teachings of the patent without independent experiments, and whatever is not taught by patent and requires independent experiments is left for future inventors.

2. Witnesses ⟨⟩16—Operativeness of alleged anticipatory foreign patent held too speculative to authorize granting subpœna duces tecum in interference proceeding (28 USCA § 647).

In interference proceeding relating to ammunition patent, in which claim of anticipation by foreign patent was set up, operativeness of foreign patent, attempted to be established by showing that same ingredients were used in a certain ammunition, *held* too speculative and incompetent to authorize issuance of subpœna duces tecum under Rev. St. § 869 (28 USCA § 647), to obtain testimony relative to operativeness of such foreign patent.

3. Witnesses ⟨⟩16—Subpœna duces tecum should not issue where facts to be proved can be otherwise established (28 USCA § 647).

A subpœna duces tecum under Rev. St. § 869 (28 USCA § 647), should not issue, where facts to be proved by the papers wanted can be otherwise established, as where a party has in his possession or under his control the means of acquiring the information he seeks to obtain.

4. Witnesses ⟨⟩16—Subpœna duces tecum should not be issued without court order or hearing on questions of competency and materiality, especially where testimony is taken before commissioner or notary public in patent proceeding (28 USCA § 647).

Subpœna duces tecum should not issue under Rev. St. § 869 (28 USCA § 647), without order of court and without hearing counsel on question of competency and materiality, especially where testimony is taken before a United States commissioner or notary public for use in a Patent Office proceeding, and where documents or information sought are of a special, confidential, or secret nature.

In Equity. Interference proceedings between one Schuricht, one McNutt, and one Willis and between one Schuricht, one McNutt, and one Burns. On motions of Burns and Willis to quash subpœna duces tecum addressed to the Remington Arms Company and others, and by McNutt to enforce obedience thereto. Motion to quash granted, and motion to enforce denied.

George Ramsey, of New York City, for Burns and Willis.

Pennie, Davis, Marvin & Edmonds, of New York City, for McNutt.

THOMAS, District Judge. This matter comes before the court on the motion of counsel for Burns and Willis to quash a subpœna duces tecum addressed to Remington Arms Company and to one Herrmann and one Hadley, alleged to be employees of the Remington Arms Company, in connection with depositions being taken in the above interferences pending in the United States Patent Office.

A motion was also made by counsel for McNutt to enforce obedience to the subpœnas. Both motions were heard on March 27, 1928. Counsel for Burns and Willis, and counsel for McNutt filed briefs following an extended oral argument.

The testimony in question is being taken under an order issued by Acting Commissioner of Patents, Dr. Kinnan, dated January 28, 1928, and is as follows:

"The party McNutt has filed a petition that he be permitted to take testimony relative to the operativeness of the disclosure of certain prior art patents set up in his motion to dissolve. The parties have stipulated that such testimony may be taken.

"Under the circumstances of the case, the petition is granted, and the law examiner is directed to set times for McNutt to take such testimony and times for the other parties to take rebuttal and have hearing of the motions at which such testimony is to be considered."

This order relates to the operativeness of the disclosures of the patent or patents in question. Section 869, Revised Statutes (28 USCA § 647), under which such subpœnas are asked, provides, inter alia, that—

"Such judge, on being satisfied by the affidavit of the person applying, or otherwise, that there is reason to believe that such paper, writing, written instrument, book, or other document is in the possession or power of the witness, and that the same, if produced, would be competent and material evidence for the party applying therefor, may order the clerk of said court to issue such subpœna accordingly."

It is therefore necessary at the outset to determine whether the papers demanded as

evidence will be competent and material evidence for the party McNutt under the Patent Office order under which this testimony is being taken.

[1] It appears from the papers on file that McNutt, assignor to Winchester Arms Company, is trying to sustain the burden, placed upon him by proving that the priming composition of the Ziegler British patent, No. 14,583 of 1900 has been commercialized in Swiss ammunition which is fully operative and is of the highest quality. From the brief of counsel for Burns and Willis, it appears that there are certain differences between the main disclosure in the Ziegler patent and the Swiss ammunition, at least in the proportions of the ingredients, and that such differences exist does not seem to be seriously denied. It does not seem to me, however, that this question is of any importance, in view of the conclusions hereinafter set forth. The issue in the Patent Office is, Does the Ziegler patent teach persons skilled in .the art as it was known when the patent was issued to make an operative primer by following the teachings of the patent, and without independent experiments? In Wirt v. Farrelly et al. (C. C.) 84 F. 891, Judge Wheeler, on page 892, said:

"A patent cannot, as an anticipation, properly have implied into it, from necessity, more than it fairly shows, to make it represent an operative structure. What is required, and not so shown, is left for later inventors. Dashiell v. Grosvenor, 162 U. S. 425, 16 S. Ct. 805 [40 L. Ed. 1025]; Universal Winding Co. v. Willimantic Linen Co. (C. C.) 82 F. 228."

See, also, New England Motor Co. v. B. F. Sturtevant Co. (C. C.) 140 F. 866, where Judge Hazel, on page 869, repeated the rule stated in the Wirt Case, supra.

The rule as to anticipation by a foreign patent is very strict, and is well expressed in the decision in Permutit Co. v. Harvey Laundry Co. et al. (D. C.) 274 F. 937. At page 940, Judge Hazel said:

"Inasmuch as controlling importance is attached by defendants to what is described and illustrated in the prior foreign publications, the rule as to them may be stated here. Foreign publications, to constitute them anticipations of a later invention, must disclose a complete and operative structure, and, indeed, the description given must be sufficiently clear and definite and understandable to enable persons skilled in the art or science to which the invention or device belongs to practice and construct it. Seymour v. Osborne, 11 Wall. 516, 20 L. Ed. 33; Badische

Anilin & Soda Fabrik v. Kalle (C. C.) 94 F. 163. Drawings or exhibits, if any, shown in connection with prior publications, must be considered with the published description of the device, which the law requires must be in 'full, clear, and exact terms,' so that those desiring to manufacture the article or reduce it to practice may do so without either independent experiments or the exercise by them of· the inventive faculty. If the prior description and drawings relied on do not conform to that rule, a subsequently issued patent in this country for the same invention is not defeated. Hanifen v. Godshalk Co. (C. C.) 84 F. 649. In Robinson on Patents, vol. 1, § 329, it is stated that the invention described in the prior publication must be identical in all respects with that whose novelty it contradicts."

The Court of Appeals for the Second Circuit, in affirming the decision, Permutit Co. v. Harvey Laundry Co., 279 F. 713, speaking by Judge Manton, said, on page 719:

"If prior patents and publications can be reconstructed by extraneous efforts to fit the exigency of the case, it would, as was said in Badische Anilin & Soda Fabrik v. Kalle & Co., 104 F. 802, 44 C. C. A. 201, require an inquiry, not only as to what the publication communicates to the public, but 'it will be transferred to an endeavor to ascertain what its author intended to communicate.' We cannot read into this article what is not there, and which it would be necessary to obtain from the later development of the art in order to meet with appellee's success.

"In 1906 Gans applied for the German patent 197,111. This patent covers the invention made in artificial zeolites. It deals with the precipitation system of softening water, but is devoted to the method of manufacturing zeolites. The patent fails to anticipate the patent in suit. It was the same inventive mind at work. When he applied for his German patent, he did not disclose the subject-matter of the patent in suit, because it was three years later when he disclosed his present inventive thought and applied for the patent in suit. He does not describe the same idea of means in the same stage of development as that which his later invention embodies. A reading of the statement of the German patent fails to disclose a description of a complete and operative art or instrument ready for immediate employment by the public. Westinghouse v. Great Northern, 88 F. 258, 31 C. C. A. 525."

In Carson v. American Smelting & Refining Co., 4 F.(2d) 463, Judge Gilbert,

speaking for the Circuit Court of Appeals for the Ninth Circuit, states the rule in the following language on page 465:

"A foreign patent is to be measured as anticipatory, not by what might have been made out of it, but by what is clearly and definitely expressed in it. An American patent is not anticipated by a prior foreign patent, unless the latter exhibits the invention in such full, clear, and exact terms as to enable any person skilled in the art to practice it without the necessity of making experiments. Seymour v. Osborne, 11 Wall. 516, 555, 20 L. Ed. 33; Hanifen v. Armitage (C. C.) 117 F. 845; Permutit Co. v. Harvey Laundry Co. (C. C. A.) 279 F. 713; General Electric Co. v. Hoskins Mfg. Co., 224 F. 464, 140 C. C. A. 150. In Westinghouse Airbrake Co. v. Great Northern Ry. Co., 88 F. 258, 31 C. C. A. 525, the court said: 'The prophetical suggestions in English patents of what can be done, when no one has ever tested by actual and hard experience and under the stress of competition the truth of these suggestions, or the practical difficulties in the way of their accomplishment, or even whether the suggestions are feasible, do not carry conviction of the truth of these frequent and vague statements.'"

This rule was later quoted and followed by Judge Van Orsdel in Re Ek, 19 F.(2d) 677, 57 App. D. C. 203.

[2] Counsel for McNutt has referred to a number of decisions setting forth a rule where operativeness of a patent in suit is attacked. The question of operativeness of prior art patents, as in this case, is somewhat different from the question of operativeness of a patent in suit. This is very properly so, as the benefit of the doubt should be resolved in favor of the subsequent inventor, whereas a patent in suit must be proven incapable of operation in order to overcome the presumption of its validity. Even though it could be proven that the Swiss ammunition contains the same ingredients and in the same proportions as taught by the Ziegler patent (which is denied by counsel for Burns and Willis), such proof would not be material and relevant, because manufacturers of Swiss ammunition may have some secret knowledge not disclosed in the Ziegler patent which would enable them to make operative ammunition, whereas others, without this knowledge, would not be able to make operative ammunition from the teachings of the Ziegler patent. Whatever is not taught by the patent and requires independent experimentation is left for future inventors. If operative ammunition can be made by trying out the mixture set forth in the patent, the operativeness of the Ziegler patent is established, whereas, if operative ammunition cannot be made by persons skilled in the art by following the disclosure of the patent without independent experimentation, no amount of proof of the operativeness of the Swiss ammunition will prove the operativeness of the Ziegler patent. It is therefore clear that evidence concerning the Swiss ammunition is so speculative and so obviously incompetent and immaterial that the subpœna should be quashed.

[3] Furthermore, even if the operativeness of the Swiss ammunition was material, the subpœna should be recalled under the rule that a subpœna should not issue where the facts to be proved by the papers wanted can be otherwise established, as where a party has in his possession or under his control the means for acquiring the information he seeks to obtain, In re Romine (D. C.) 138 F. 837, at page 843, and cases there cited, because (a) Winchester already has Remington's analysis as well as its own and that of the Frankford Arsenal and Picatinny; and (b) the matter to be proved is open to it by having suitable tests of the Ziegler patent disclosure made by experts.

[4] It seems that the witnesses appeared before the United States commissioner and testified, but that they refused to answer many questions under instructions of counsel, who argued that the subpœna was not properly issued. When the matter was brought before the court at the hearing on March 27th, counsel for Remington, Burns, and Willis based his refusal on the ground, first, that the subpœna had been issued without an order of court; and, second, that counsel should have been heard on the question of competency and materiality before the subpœna was issued. Tucker v. Peiler (C. C. A.) 297 F. 570.

This is especially the case where testimony is taken before a United States commissioner or notary public for use in a Patent Office proceeding, and where the documents or information sought are of a special, confidential, or secret nature. In Dancel et al. v. Goodyear Shoe Machinery Co. (C. C.) 128 F. 753, at page 760, Judge Colt said:

"It is to be borne in mind, in this connection, that the compulsory production of books and papers in court, where all questions as they arise can be submitted to and decided by the court, is very different from their compulsory production before a notary public under section 863 [28 USCA § 639], or an examiner under equity rule 67, where the

magistrate has little power to afford protection to the witness."

However, counsel were advised at the hearing that the subpœna was issued upon order of court, which order, however, was apparently not served on counsel. The attorney for the witnesses had a right to be heard on the validity of the subpœna and to protect witnesses and the Remington Company from disclosing documents not properly demandable under subpœna. Perhaps a better way to test the question would have been by a timely application to the court for an order to quash the subpœna until counsel could be heard. At the hearing on the motion, counsel explained that this was not possible on account of the short time between service of the subpœna and the return thereon.

The motion to quash is granted, and the motion to enforce is denied, and it is so ordered.