## DIAMOND INTERNATIONAL CORPORATION, a corporation of Delaware, Appellee,

v.

## MARYLAND FRESH EGGS, INC., a corporation of Maryland, Appellant.

### No. 74–2104.

United States Court of Appeals, Fourth Circuit.

Argued March 7, 1975.

Decided July 29, 1975.
Certiorari Denied Feb. 23, 1976.
See 96 S.Ct. 1113.

**114**

Herbert C. Brinkman, Jr., Cincinnati, Ohio (Richard H. Evans, Bruce Tittel, Truman A. Herron, Wood, Herron & Evans, Cincinnati, Ohio, Benjamin C. Howard and Miles & Stockbridge, Baltimore, Md., on brief), for appellant.

Karl W. Flocks, Washington, D. C. (Sheridan Neimark, Washington, D. C., John W. Avirett, 2d, Piper & Marbury, Baltimore, Md., and S. S. Kittelle, New York City, on brief), for appellee.

Before BRYAN, Senior Circuit Judge, FIELD, Circuit Judge and HALL, District Judge.

BRYAN, Senior Circuit Judge:

The subjects of this patent litigation are a 12-egg carton made of molded pulp and a like-shaped and purposed container made of foam polystyrene (plastic). As the assignee-owner of the patent covering the pulp carton, No. 2,990,094 issued June 27, 1961 to one Reifers (original application filed 1952), appellee Diamond International Corporation charged appellant Maryland Fresh Eggs, Inc. (MFE) with infringing its patent after notice thereof, by selling plastic cartons embodying the invention delineated in these letters patent and purchased from a manufacturer other than Diamond.[1] Concluding the patent to be invalid as lacking in novelty because anticipated in the prior art, 35 U.S.C. §§ 101 and 102(a),[2] and lacking invention because of obviousness, 35 U.S.C. § 103,[3] we reverse the District Court's judgment upholding the patent, *Diamond International Corp. v. Maryland Fresh Eggs, Inc.*, 374 F.Supp. 1223 (D.C.Md.1974).[4] We have

---

1. This manufacturer was Dolco Packaging Corporation, of Delaware, which as the real party in interest is defending this suit for MFE pursuant to an agreement to save the latter harmless from the instant claim of Diamond. Dolco's product derived from the Snow Patent No. 3,398,875 (1968).

2. § 101: "Inventions patentable.

Whoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title."

§ 102(a): "A person shall be entitled to a patent unless—

(a) the invention was known or used by others in this country, or patented or described in a printed publication in this or a foreign country, before the invention thereof by the applicant for patent . . . .."

3. § 103: "A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole

would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains. Patentability shall not be negatived by the manner in which the invention was made."

4. The only claim in suit is No. 1, and for ready reference it is now quoted in full:

"What is claimed is:

1. In an integral and nestable egg carton made of relatively flexible molded pulp, a cellular tray portion having a front side, a rear side, and two ends, an inverted dished cover hinged to said tray portion, means for latching said tray portion to said cover with a latch located above said tray portion and extending completely through said cover from the inside to the outside, said tray portion having its front side strongly tied to its rear side by a plurality of spaced cell-forming partitions extending generally parallel to said tray portion ends, said partitions acting as means for preventing spreading of said front side from said rear side, said tray portion including egg cells adjacent but below the latching means, said inverted dished cover having a planar top, a front side, a rear side, and two ends, said front

no occasion, therefore, to look to infringement. *Agrashell, Inc. v. Hammons Products Company,* 413 F.2d 89, 93 (8 Cir. 1969).

Besides the patent drawing (see p. 116 *infra*), a lay description of the carton is now offered with the hope of conveying at once a general understanding of the device in controversy. It consists of an oblong tray with an inverted dished cover or lid, hinged lengthwise along the top of the rear side of the tray; the tray is divided into 12 cellular sections, each to hold a single egg, with six sections in the front row and six in the row behind it (known as the 2 x 6 carton); extending along, upwards from, and hinged on the front edge of the tray is a flap or flange on which are two lugs or buttons projecting outwardly; the front or unhinged side of the cover has two small holes or apertures of a diameter approximating that of the lugs on the flange of the tray; as the cover is brought down, using the hinge on the rear side of the tray, the holes in the cover easily slip over the lugs, since the holes and the lugs are positioned to engage each other; this locks the cover and the tray together and thereby forms the latch constituting a principal feature of the inventive-

ness asserted for the patent; the other feature is the "plurality of spaced cell-forming partitions extending generally parallel to the said tray portion ends"—tying partitions—preventing the spreading of the front from the rear side of the carton and thus stabilizing the locking flap.

This is a product patent, embracing a combination of old elements with "improvements in a molded pulp egg carton and particularly to its integral means to releasably lock together the cover and bottom sections of the carton"—to quote from the first sentence of the specifications. Its utility is conceded but its novelty denied by appellant-defendant, 35 U.S.C. §§ 101 and 102(a) *supra.* Additionally, MFE asserts that its accused carton is not within the specifications and the claim of Reifers' (appellee Diamond-owned) patent because the latter is limited to a molded pulp carton, while MFE's is a plastic carton. In replication Diamond urges that the plastic is an equivalent of the molded pulp carton, and consequently is within the Reifers' patent coverage. However, we find it unnecessary to resolve this challenge since our view is that the patent fails for anticipation and obviousness.

side being connected to said rear side only by said two ends and said planar top so that the front side is relatively flexible and is not rigidly tied to said rear side intermediate the ends of said front side, said front side of said cover having an opening formed therein through which the latch is adapted to extend completely from the inside to the outside, said dished cover being hinged to said tray portion along its rear side, a latch holding flap hinged to the front side of said tray portion, the hinge line connection of said cover with said tray portion and the hinge line connection of said latching flap with said tray portion being maintained parallel by said tying partitions even when the tray portion is loaded with eggs, said latch on said latching flap being located on one side of said tray portion which is opposite to the side where the cover is connected to the tray portion so that both the cover and the latching flap are each connected to the tray portion when the carton is open, said molded pulp egg carton being integrally formed with the latching flap, the upper edges of the two sides and the two ends of the tray portion, the upper edges of the two sides and two ends of the cover generally in the same plane and with the latch extending downwardly from the underside of the latching flap which is hinged to the front side of the tray portion and said latch being relatively close to the tray portion as compared with the opening in the front side of the cover which is relatively remote from the tray portion; when the tray portion is loaded with eggs and the latching flap is turned upwardly and the cover portion is rotated in a direction to telescope over the latching flap, the two hinge lines are relatively immovable but the front side of the cover may flex, whereby the loaded egg carton may be latched by simply rotating the latching flap upwardly and inwardly and rotating the cover upwardly and around the latching flap while the structural features maintain the geometric relation of the latch on the latching flap to the opening in the cover until the front side of the cover engages the latch on the latching flap and is cammed thereover until the latch on the latching flap registers with the opening in the front side of the cover whereupon the latch passes through the opening in the cover from the inside to the outside to effectively latch the carton."

Our holding observes the lesson of *Graham v. John Deere Co.,* 383 U.S. 1, 17, 86 S.Ct. 684, 694, 15 L.Ed.2d 545 (1966) for the ascertainment of obviousness:

"While the ultimate question of patent validity is one of law, *A. & P. Tea Co. v. Supermarket Corp., supra,* 340 U.S. at 155 [71 S.Ct. 127 at 131, 95 L.Ed. 163], the § 103 condition, which is but one of three conditions, each of which must be satisfied, lends itself to several basic factual inquiries. Under § 103, the scope and content of the prior art are to be determined; differences between the prior art and the claims at issue are to be ascertained; and the level of ordinary skill in the pertinent art resolved."

### The Prior Art

To begin with, concededly the Reifers' carton was built upon the Cox Patent No. 2,771,233 (1956, issued on 1950 application), known as the Case Ace carton, (see juxtaposed drawings of the two on p. 116).

Cox Patent No. 2,771,233

cover

flap or flange

Reifers Patent No. 2,990,094

apertures or holes

cover

tray

flap or flange

lugs or buttons

Although Cox provided no latching between the tray and the cover, otherwise the form of the two products is not dissimilar. In its pretrial order the District Court finds that "the *only structural differences* between the carton shown in the Reifers' patent in suit and the carton shown in the Cox '233 patent is the locking feature". (Accent added.) Moreover, Reifers was employed by Cox to put a latch on Cox's carton. Instead of a latch to keep the tray and cover together, Cox relied upon the friction between the front of the cover and the flap along the edge of the tray when the cover is hinged down over it. Thus plainly Reifers was anticipated by Cox in the configuration of the carton.

As to the Reifers' lock, it is apt to emphasize that Cox, like Reifers, provided a flap or flange along the top of the front wall of the tray and fitting under the front of the cover when the carton is closed. As confirmed by the drawings of Cox and Reifers, to supply the latch Reifers merely added to Cox two holes in the cover and two buttons on the flap. This type of latching, as patentee Reifers stated in a letter to Cox, was anticipated by use years before.

Convincing of this are the earlier uses of the lug-in-hole locking found on containers *other than egg cartons.* Unlike the trial court we think these are apposite because it is the principle of the latch, not its vehicle of application, which is enlightening. *Graham v. John Deere Co.* (*Calmar, Inc. v. Cook Chemical Co.*), *supra,* 383 U.S. 1, 35, 86 S.Ct. 684, 15 L.Ed.2d 545. To be stressed in this review of carton history is that the focal point is the latch, for only the latch is now in issue. The conformation of the Reifers' carton—including its partitions and reinforcing ties—indisputably is that of the Cox '233 Case Ace, and so was anticipated by the latter.

Tuttle Patent No. 117,349 (1871) embodied an improved pasteboard packing

box. It included projections placed on the box to extend through holes on the lid, as illustrated on p. 117. The patent describes the conception as follows:

Case A.

John W. Tuttle's
Imp. Packing Box.

117349

PATENTED JUL 25 1871

*Fig 1.* — slot or opening, cover, projection through opening

*Fig. 2.* — projection, slot or opening, cover

*Fig. 3.* — slot

*Fig. 4.* — projection

Witnesses:
S. N. Piper.
L. N. Miller

John W. Tuttle.
by his attorney
R. H. Eddy

"What I claim as my present invention is—

"The improved pasteboard packing-box, as provided with slots arranged through the sides or ends of its cover, as described, and with corresponding projections to enter such, arranged and formed on or from the body, as set forth".

Hooper British Patent No. 406,159 exhibits a box consisting of a tray and a (1934), its drawing reproduced on p. 118 hinged lid with a button and hole latch.

406,159 ·COMPLETE SPECIFICATION                                    I SHEET

HOOPER, BRITISH PATENT NO. ,406,159

FIG.1.

recess or ·hole

projecting head or button

[This Drawing is a reproduction of the Original on a reduced scale.]

FIG.2.

FIG.3.

DX 87 Tab 26

Malby & Sons, Photo·Litho.

The unit is described as:

"The side 8 of the lid 2 opposite to the hinge 3 is provided with a recess 9 which, when the box is closed, is sprung over the projecting head 7 so that the box is retained closed.

*    *    *    *    *    *

"3. A moulded box or case according to Claim 2 wherein the tongue or the loke is formed on a thickened portion of the wall of the body of the box and the catch or projection is engageable resiliently with a recess formed in the interior of the lid.

"4. A moulded box or case according to Claim 1 or 3 wherein the projection comprises the head of a rivet secured in a hole in said resilient tongue."

Hunziker Patent No. 1,354,042 (1920) (see p. 119) devises a cigarette case, made up of a tray, a lid, a flange forming the tray's front wall, a boss or lug on the flange and a notch or hole on the lid passing over the lug in the closed position.

B. F. HUNZIKER.
CIGARETTE CASE.
APPLICATION FILED MAR. 8, 1920.

1,354,042.

Patented Sept. 28, 1920.

Fig. 1

notch or hole

lug or boss

Fig. 2

flange

Fig. 4

Fig. 3

INVENTOR
Benjamin F. Hunziker
BY HIS ATTORNEYS

These are the related words of the patent:

"The edge flange 8 is formed with a notch 10, and the offset portion 9a of the edge flange 9 has an outwardly pressed boss 11 that is beveled on its upper side and terminates in a sharp shoulder. When the case is closed, the boss or lug 11 will cam itself into interlocking engagement with the notch 10, and to release the same from the said notch when it is desired to open the case, the flange 9 must be sprung inward by pressure from the fingers."

When considered with these products, a pertinent reference to the art prior is Koppelman No. 2,093,280 (September 14, 1937),[5] copied on p. 120.

KOPPELMAN PATENT NO. 2,093,280

It consists of a tray compartmentalized to provide pockets for eggs; a cover hinged on the rear side of the tray; a flap on the outer edge of the forward or front wall of the *cover* (the Reifers' flange is hinged to the bottom tray); lugs on the flap or flange (as in Reifers); and apertures or holes in the front wall of the *tray* (the Reifers' holes are in the cover). As the cover is brought over and upon the tray, the flap moves down into the tray, just inside the front wall of the tray. Thereupon the lugs or buttons fit into the apertures in the front wall of the tray. The eggs in the front row press against the flap, aiding the maintenance of the lugs or buttons in the apertures in the front wall of the tray.

■ True, the positions of the lugs and the holes are in an arrangement in reverse of Reifers—with the lugs on the cover and holes in the tray—but the employment of lugs and holes in this environment at once suggests the Reifers' latch. Even if Koppelman had never been made commercially, as appellee Diamond asserts, it may be considered as anticipation. *Dashiell v. Grosvenor,* 162 U.S. 425, 432, 16 S.Ct. 805, 40 L.Ed. 1025 (1896).

5. The District Judge (374 F.Supp.1227) commented that defendant-appellant's counsel had admitted in argument "that Koppelman was not an anticipation". Our interpretation of his colloquy with the Court is that the attorney was conceding that Koppelman was not identical with Reifers and that without association with the other alleged prior art specimens it would not amount to anticipation.

*Obviousness*

■ While this array of prior art, we think, destroys the idea of novelty or invention in Reifers under 35 U.S.C. §§ 101 and 102(a), a complete appraisal of the Reifers' patent requires its evaluation under 35 U.S.C. § 103 for obviousness. To us the same array simultaneously also proves this infirmity. It is presently academic whether novelty and obviousness are questions of fact or of law, for in either event we think that on these issues the findings of the District Court on the facts are clearly erroneous and its conclusions on the law cannot stand.

We see Reifers as only an adaptation of the button and button-hole principle. It is transparently existent in Reifers' improvement of the Cox carton, for Reifers simply put two clasps of this design on Cox. Repeatedly does it appear in the non-egg uses just considered as well as in Koppelman. From his experience and awareness of the history of this locking contrivance the "person having ordinary skill in the art", 35 U.S.C. § 103, would recognize this bonding mechanism in Reifers.

This is true even in regard to Koppelman's reversal of the fastening elements. The statutory-skilled person would quickly grasp the similitude of the Reifers and Koppelman latches, since to arrive at the Reifers' concept would only require the transfer of the flap from the cover to the tray and the holes from the tray to the cover. (See drawing on p. 120).

*Incidental Considerations*

The evidence is greater than a mere preponderance and squarely rebuts the presumption of patent validity accorded by 35 U.S.C. § 282. *Stukenborg v. Teledyne, Inc.,* 441 F.2d 1069, 1072 (9 Cir. 1971), *cert. denied* 404 U.S. 852, 92 S.Ct. 90, 30 L.Ed.2d 92. Its force and clarity overshadows the effect of long-felt want, licenses, commercial success, and other secondary factors in adjudging patentability.

*In fine,* continuing obedient to the precepts of *Graham v. John Deere, supra,* 383 U.S. 1, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966), we are required to reverse, at no moment, however, losing sight of the intense study, thought and industry of the District Judge.

Reversed.